UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DISH NETWORK L.L.C. and
NAGRASTAR LLC,

                    Plaintiffs,

          *v.*

TOMASZ KACZMAREK, JOHN DEFOE,
JULIA DEFOE, and DOES 1–10,

                    Defendants.

**REPORT &
RECOMMENDATION**
19-CV-4803-EK-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC ("NagraStar,"

together, "Plaintiffs") commenced this action on August 21, 2019 against Defendants

Tomasz Kaczmarek ("Kaczmarek"), John and Julia Defoe (the "Defoes"), and unknown

individuals Does 1–10, alleging that Kaczmarek, with the assistance of the Defoes,

operates a streaming service called "IPGuys" which rebroadcasts DISH programming

without authorization and in violation of the Federal Communications Act.[1]  Kaczmarek

failed to answer or otherwise respond to the Complaint, and the Clerk of Court entered a

certificate of default on February 23, 2021.[2]  The Defoes appeared in the case through

counsel on September 17, 2019, and participated in the litigation for several months.

After repeated failures to comply with Court orders, the Court permitted Plaintiffs to

seek a default judgment against the Defoes.[3]  On February 24, 2021, Plaintiffs moved for

---

[1] Pls.' Compl. dated Aug. 21, 2019 ("Compl."), Dkt. No. 1.

[2] Certificate of Default dated Feb. 23, 2021 ("Certificate of Default"), Dkt. No. 36.

[3] Order dated Nov. 3, 2020.

a default judgment against the three named Defendants.[4]  The Honorable Eric R. Komitee referred the motion to the undersigned for a report and recommendation, and for the reasons outlined below, the Court respectfully recommends that the motion for default judgment be denied as to Kaczmarek and granted in part as to the Defoes, and that damages be granted as discussed below.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DISH provides broadcast television and pay-per-view programming to paying subscribers.  (Compl. ¶¶ 1, 10).  DISH operates by purchasing broadcast rights to certain programming and then broadcasting that programming to subscribers in exchange for fees.  (*Id.* ¶¶ 10–11).  The broadcast is accomplished by transmitting the programming to geosynchronous satellites in orbit which they relay the encrypted signal to subscribers.  (*Id.* ¶¶ 11–12).  Subscribers are provided with specialized equipment—including a DISH satellite receiver and a smart card—to decrypt the satellite signal so they can view DISH programming on their televisions.  (*Id.* ¶¶ 10, 12).  Plaintiff NagraStar provides the smart cards and security technology that enables subscribers to view the programming.  (*Id.* ¶ 10).

Defendant Kaczmarek resides at 1473 Rosebella Avenue, Gloucester, Ontario, Canada.  (*Id.* ¶ 4).  The Defoes are a married couple residing at 1247 Dean Street, Brooklyn, New York.  (*Id.* ¶ 5; Defs.' John Defoe and Julia Defoe's Answer and Affirmative Defenses dated Oct. 1, 2019 ("Defoes Answer"), Dkt. No. 16, ¶ 5).

Plaintiffs allege that Kaczmarek runs "IPGuys," a streaming service that unlawfully rebroadcasts DISH programming to its own customers.  (Compl. ¶¶ 1, 13).

_____

[4] Pls.' Notice of Mot. and Mot. for Default J. Against Defs. dated Feb. 24, 2021 ("Mot."), Dkt. No. 37.

They allege IPGuys obtains DISH programming via actual DISH subscribers, who open accounts to "seed" the service. (*Id.* ¶ 13; Decl. of Jordan Smith dated Feb. 11, 2021 ("Smith Decl."), Dkt. No. 37, ¶¶ 5–7). Plaintiffs allege that the Defoes established and maintained multiple "seeder accounts"—some under false contact information—that supported IPGuys. (Compl. ¶¶ 14–15; Smith Decl. ¶¶ 2, 8).

IPGuys customers access the service by purchasing a passcode, which—in conjunction with a cable box or other receiver—enables them to stream DISH content. (*See, e.g.*, Decl. of Roopnarine David Mukhlall dated May 8, 2020 ("Mukhlall Decl."), Dkt. No. 37, ¶ 2). Kaczmarek sold this access using "a network of resellers," (Compl. ¶ 17), with each passcode selling for approximately $15 per month, (Smith Decl. ¶ 10). For example, one reseller marketed passcodes through the website www.ipguys-live.com ("IPGuys Live"). (Mukhlall Decl. ¶ 2). Approximately 8,295 passcodes were sold through IPGuys Live. (*Id.* ¶ 5). NagraStar engaged an investigator to pay $44.97 via PayPal for a three-month IPGuys subscription and was—with the assistance of IPGuys Live support technicians—able to stream IPGuys, and thus DISH, programming. (*See* Confidential Investigation Report, attached as Ex. 8 to Smith Decl., Dkt. No. 37). Plaintiffs do not allege that Kaczmarek maintained his own website through which he marketed or sold IPGuys passcodes.

Plaintiffs make no allegations and present no evidence that the Defoes had any other connection with IPGuys. They do not allege the Defoes operated IPGuys with Kaczmarek or otherwise conspired with Kaczmarek to pirate DISH programming. Instead, Plaintiffs mention that Kaczmarek operated a prior business called "Digital Clinic"—through which he sold modified DISH hardware to customers—and that the Defoes sold Digital Clinic subscriptions. (Compl. ¶ 19). Activity related to Digital Clinic,

however, is not the conduct for which, in this action, Plaintiffs seek to hold the Defoes liable. Plaintiffs also do not connect the Defoes to IPGuys—they do not claim that the Defoes sold IPGuys passcodes themselves as resellers, worked with any resellers, or profited in any way from IPGuys.

Plaintiffs commenced this action by filing the Complaint on August 21, 2019. (*Id.*). The Complaint asserts two claims. First, DISH alone alleges that Kaczmarek, the Defoes, and Does 1–10 violated § 605(a) of the Federal Communications Act, 47 U.S.C. § 605(a), by facilitating the rebroadcasting of DISH programming without authorization for private financial gain. (Compl. ¶¶ 21–25). Second, DISH and NagraStar allege that Kaczmarek violated § 605(e)(4) of the Federal Communications Act, 47 U.S.C. § 605(e)(4), by selling passcodes that allowed IPGuys customers to access DISH programming without authorization for his own financial gain. (Compl. ¶¶ 27–29). The second claim is not brought against the Defoes.

Kaczmarek was served with a copy of the summons and Complaint by personal delivery to his residence in Ontario on September 9, 2019. (Aff. of Service dated Sept. 16, 2019 ("Kaczmarek Executed Summons"), Dkt. No. 12, ¶ 2). Kaczmarek, proceeding *pro se*,[5] filed a letter with the Court, docketed on October 17, 2019, that requested an extension of time to respond to the Complaint until October 20, 2019. (Letter dated Sept. 30, 2019, Dkt. No. 18, at 1). His letter indicated that he resided part-time in Ontario and part-time in Poland, (*id.*), and was sent in an envelope with the return address 1473 Rosebella Avenue, Gloucester, Ontario, Canada, (*id.* at 2). The letter also

---

[5] In the letter he submitted to the Court, Kaczmarek explained that he consulted with a lawyer in Canada, but that the lawyer did not represent him in the litigation. (Letter dated Sept. 30, 2019, Dkt. No. 18, at 1).

enclosed a stipulation, signed by Kaczmarek and Plaintiffs' counsel, agreeing to the extension of time and providing that Kaczmarek "expressly reserves[ ] any and all defenses." (*Id.* at 3).  The motion was granted.  (Order dated Oct. 10, 2019).  The Court later *sua sponte* extended time for Kaczmarek to respond to the Complaint until December 2, 2019.  (Order dated Nov. 12, 2019).  Because court records did not reflect that either of these orders were mailed to Kaczmarek, on January 4, 2021, the Court *sua sponte* extended the time for Kaczmarek to respond to the Complaint until February 8, 2021.  (Order dated Jan. 4, 2021).  A copy of the docket sheet was mailed to Kaczmarek at his 1473 Rosebella Avenue address by the Court, and Plaintiffs also served a copy of the order granting the extension on Kaczmarek to that address.  (*See* Certificate of Service dated Jan. 4, 2021, Dkt. No. 33).  Kaczmarek did not respond to the Complaint, and a default was entered by the Clerk of Court on February 23, 2021.  (Certificate of Default).

John Defoe was personally served at his residence in Brooklyn on August 23, 2019.  (Aff. of Process Server dated Sept. 9, 2019 ("John Defoe Executed Summons"), Dkt. No. 8).  John Defoe also accepted service on behalf of Julia Defoe.  (Aff. of Process Server dated Sept. 9, 2019 ("Julia Defoe Executed Summons"), Dkt. No. 9).  The Defoes appeared in this action through counsel on September 17, 2019.  (Appearance of Counsel dated Sept. 17, 2019, Dkt. No. 10).

The Defoes participated in this litigation, including through mediation and discovery, for several months.  On June 4, 2020, the Defoes' attorney, Todd Wengrovsky ("Wengrovsky"), moved to withdraw.  (Notice of Mot. dated June 4, 2020, Dkt. No. 26).  A telephonic hearing was held on Wengrovsky's motion on June 30, 2020.  (Min. Entry and Order dated June 30, 2020; Tr. of Civil Cause for Status Conference dated June 30,

2020 ("Hr'g Tr."), Dkt. No. 38).  The Defoes appeared at the hearing, and they informed

the Court they no longer wished Wengrovsky to represent them and intended to obtain

new counsel.  (Hr'g Tr. at 2:10–:13, 2:25–3:08).  The motion to withdraw was granted,

and the Court advised the Defoes that they had thirty days to obtain new counsel or they

would be deemed to be proceeding *pro se*.  (*Id.* at 4:14–5:01).  The Court also advised

the Defoes that, if they did not appear for future conferences, a default judgment could

be entered against them.  (*Id.* at 7:02–:11 ("[I]f you don't have a new lawyer, you have to

appear for those conferences.  If you don't appear for those conferences, the plaintiff

could seek what's known as a default judgment against you.")).  Wengrovsky was also

directed to provide a copy of the Court's subsequent minute order to the Defoes.  (Min.

Entry and Order dated June 30, 2020).

No attorney appeared on behalf of the Defoes by the deadline.  And on August 6,

2020, the Court scheduled a status conference for September 29, 2020.  (Order dated

Aug. 6, 2020).  The Defoes failed to appear, and they were directed to show cause why

they failed to appear before the Court by October 6, 2020.  (Order to Show Cause dated

Sept. 30, 2020).  The Order to Show Cause was mailed to them by the Court.  The

Defoes failed to respond, and on October 13, 2020, the Court issued an order extending

the time for the Defoes to show cause to October 27, 2020.  (Order dated Oct. 13, 2020).

The order warned the Defoes that, if they failed to respond, the Court could impose

sanctions, including a default judgment.  (*Id.*).  This order was mailed to the Defoes by

the Court. The Defoes did not respond and, on November 3, 2020, the Court authorized Plaintiffs to seek a default judgment against them. (Order dated Nov. 3, 2020).[6]

Plaintiffs moved for a default judgment against the Defoes and Kaczmarek on February 24, 2021 on both counts in the Complaint. (Mot.). The motion seeks statutory damages for Defendants' alleged violations of the Federal Communications Act and a permanent injunction. (Pls.' Mem. of Law in Supp. of Mot. dated Feb. 24, 2021 ("Mem."), Dkt. No. 37, at 18). The motion was referred to the undersigned for a report and recommendation by the Honorable Eric R. Komitee on February 25, 2021. (Order Referring Mot. dated Feb. 25, 2021). As outlined below, the Court respectfully recommends that the motion be granted in part and denied in part. The Court recommends that the Complaint be dismissed as to Defendant Kaczmarek for lack of personal jurisdiction, judgment be entered against John and Julia Defoe for violations of § 605(a) of the Federal Communications Act, and statutory damages be awarded as set out below.

DISCUSSION

I.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Ya Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010); *City of New York v. Mickalis*

---

[6] Plaintiffs moved for a default judgment on January 4, 2021. (Pls.' Notice of Mot. and Mot. for Default J. Against Defs. dated Jan. 4, 2021, Dkt. No. 34). The motion was mailed to the Defoes. (Pls.' Certificate of Service dated Jan. 4, 2021, Dkt. No. 34). The Court denied the motion without prejudice given the extension of time for Kaczmarek to respond to the Complaint. (Order dated Jan. 5, 2021). After Kaczmarek defaulted, the Court directed Plaintiffs to refile a consolidated motion for default judgment against Kaczmarek and the Defoes, (Order dated Feb. 9, 2021); the Defoes did not respond to the motion or the subsequent order.

*Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) ("A non-appearing defendant does not, by defaulting, forfeit its right to challenge any ensuing default judgment for lack of personal jurisdiction."). A court may *sua sponte* dismiss an action for lack of personal jurisdiction following a default. *See, e.g.*, *Sinoying Logistics Pte Ltd.*, 619 F.3d at 214; *Yao Wu v. BDK DSD*, No. 14-CV-5402, 2015 WL 5664256, at *3 (E.D.N.Y. Aug. 31, 2015) (recommending denial of default judgment motion and dismissal of action against unknown residents of China where plaintiff did not allege any connection between their activities and New York), *report and recommendation adopted*, 2015 WL 5664534 (Sept. 22, 2015).[7]

The Court concludes that it lacks personal jurisdiction over Kaczmarek and recommends that he be dismissed from the case. Kaczmarek made an application to this Court early in this litigation—seeking to extend the time to answer—but he has not participated since. And he never filed an answer. As a result, he did not consent to participate in the case or waive personal jurisdiction. *Hiscox Ins. Co. v. Bordenave*, 18-CV-10222, 2019 WL 2616338, at *5 (S.D.N.Y. June 26, 2019) (collecting cases that requesting an extension of time to answer does not constitute a forfeiture of personal jurisdiction); *accord* Fed. R. Civ. P. 12(h); *see, e.g.*, *Azikiwe v. Nigerian Airways Ltd.*, No. 03-CV-6837, 2005 WL 8160005, at *3, *9, *11–12 (E.D.N.Y. Aug. 24, 2005) (finding the court lacked personal jurisdiction over certain improperly served defendants who appeared in the action through counsel but never filed an answer or otherwise participated in the litigation), *report and recommendation adopted in relevant part*,

---

[7] In contrast, it is inappropriate to *sua sponte* raise personal jurisdiction when the defendant has consented because an objection to such jurisdiction is waivable. *Sinoying Logistics Pte Ltd.*, 619 F.3d at 213.

2005 WL 8160004 (Sept. 12, 2005). In any event, the Clerk of Court entered a default against him following his continued nonparticipation, and he is now not before the court in any capacity. As a result, the Court may *sua sponte* consider personal jurisdiction. *See Sinoying Logistics Pte Ltd.*, 619 F.3d at 213.

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). These requirements are: (1) proper service upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) consistency with the principles of constitutional due process. *Id.* at 60. On the record presented, the Court finds no statutory basis for personal jurisdiction.[8]

The statutory basis for personal jurisdiction is governed by the law of the state where the court is located; in this case, New York. *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 480 (E.D.N.Y. 2019) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). And because Kaczmarek is domiciled outside New York, the operative provision of New York law is its long-arm statute: CPLR 302(a). *Id.* CPLR 302(a) provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or *through an agent*:
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

---

[8] Because this requirement is not met, the Court does not reach the question of whether service was proper or whether such an exercise would be within constitutional limits. *See, e.g.*, *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 483–84 (E.D.N.Y. 2019) ("Because Madison has failed to establish personal jurisdiction over Julian under the long-arm statute, the Court need not examine whether its exercise would comport with due process.").

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

CPLR 302(a) (emphasis added).  New York's long-arm statute "is a 'single act statute'"; that is, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (quoting *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 652 (1977)).  The burden of demonstrating long-arm jurisdiction rests with Plaintiffs.  *See, e.g.*, *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 361–62 (S.D.N.Y. 2020) ("Plaintiffs have the burden of pleading such personal jurisdiction."), *aff'd in relevant part on reconsideration*, 2020 WL 5350541, at *3 (Sept. 4, 2020); *see also* David D. Siegel, *New York Practice* § 93 (6th ed. 2020) ("[T]he plaintiff may have the 'burden,' but it's a burden that discharges more easily than other burdens.").  Here, Plaintiffs advance a number of theories under CPLR 302(a) about this Court's jurisdiction over Kaczmarek.  None have merit.

A.     Defoes as Agents

Plaintiffs assert that the Court possesses jurisdiction over Kaczmarek based on the acts of his supposed agents, the Defoes.  They argue that jurisdiction is justified pursuant to CPLR 302(a)(1) because Defoes transacted business in New York as his agents, (Mem. at 7); pursuant to CPLR 302(a)(2) because the Defoes committed tortious

acts in New York as his agents, (*id.* at 9); and pursuant to CPLR 302(a)(3) because the

Defoes injured Plaintiffs in New York as his agents, (*id.* at 9 n.1).  Because Plaintiffs have

not established an agency relationship between Kaczmarek and the Defoes, each

argument fails.

"Although the New York courts have not marched to the beat of a single drummer

when construing section 302, they have customarily interpreted the term 'agent' fairly

broadly, especially in suits by injured third parties."  *Grove Press, Inc. v. Angleton*, 649

F.2d 121, 122 (2d Cir. 1981).  Under section 302, "there is jurisdiction over a principal

based on the acts of an agent where 'the alleged agent acted in New York for the benefit

of, with the knowledge and consent of, and under some control by, the nonresident

principal.'"  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)

(quoting *Grove Press, Inc.*, 649 F.2d at 122).  The "element of control" is "critical."

*Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 55 (2d Dep't 2016).

> [T]o make a "prima facie showing of control, a plaintiff's allegations must
> sufficiently detail the defendant's conduct so as to persuade a court that the
> defendant was a primary actor in the specific matter in question; control
> cannot be shown based merely upon a defendant's title or position within
> the corporation, or upon conclusory allegations that the defendant controls
> the corporation."  Where the plaintiff has made only broadly worded or
> vague allegations about a defendant's participation in the action allegedly
> taken in New York, courts have routinely granted motions to dismiss for
> lack of personal jurisdiction.

*Barron Partners, LP v. Lab123, Inc.*, No. 07-CV-11135, 2008 WL 2902187, at *10

(S.D.N.Y. July 25, 2008) (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324

(S.D.N.Y. 1998)).  In their motion for default judgment, Plaintiffs argue that Kaczmarek

"had some control" over the Defoes "as shown by his use of the Seeder Accounts and the

payments he made on those accounts and to Defoe Defendants whom he engaged to

create the Seeder Accounts."  (Mem. at 7–8).  This mischaracterizes the pleadings and

affidavits presented to the Court.  For one, nowhere in the Complaint do Plaintiffs allege that Kaczmarek had any control over the Defoes.  (*See generally* Compl.).  Instead, the Complaint states that the Defoes "assisted Kaczmarek" with IPGuys.  (*Id.* ¶ 23).  And Jordan Smith, an employee of NagraStar who submitted a declaration in support of the motion, only states that the Defoes acted "in conjunction with" Kaczmarek.  (Smith Decl. ¶ 2; *see also id.* ¶ 8 ("In sum, while the Seeder Accounts were created with false information, the evidence shows Defoes were responsible for establishing the Seeder Accounts and *with* Kaczmarek maintained those accounts." (emphasis added))).  These insinuations of assistance and collaboration, even when fully credited, do not allege Kaczmarek's control over the Defoes such that their acts could be imputed to him.  No agency relationship can be inferred here.  *See, e.g.*, *Charles Schwab Corp.*, 883 F.3d at 86 ("Schwab's sparse allegations of agency, however, are too conclusory to make a prima facie showing of personal jurisdiction."); *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 486–87 (1st Dep't 2017) (affirming dismissal for lack of personal jurisdiction where plaintiffs made conclusory allegations that the purported "agent" "acted for benefit of and with knowledge and consent of [the defendant], who exercised 'some control'" over the "agent"); *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 312–13 (E.D.N.Y. 2014) (finding plaintiff failed to demonstrate personal jurisdiction over defendant based on an agency theory where it "d[id] not offer any allegations to indicate that [defendant] exercised control over [the purported agent]'s activities in New York").  Because Plaintiffs do not allege that Kaczmarek had any

control over the Defoes, the Court may not exercise personal jurisdiction over him based on their activities under any prong of CPLR 302(a).[9]

B.   Resellers as Agents

IPGuys sells subscriptions through a network of resellers like IPGuys Live. Plaintiffs posit that the Court may exercise personal jurisdiction over Kaczmarek pursuant to CPLR 302(a)(1) because those resellers acted as his agents when they sold IPGuys passcodes, (Mem. at 8), or pursuant to CPLR 302(a)(2) because those resellers committed torts in New York when selling IPGuys passcodes, (*id.* at 9).  Plaintiffs also

---

[9] In a footnote, Plaintiffs assert CPLR 302(a)(3) permits the exercise of personal jurisdiction over Kaczmarek because his "tortious activities . . . caused injury to Plaintiffs in New York in the form of lost business opportunities and damage to their reputation and goodwill," he "at minimum reasonably should have expected the tortious acts to have consequences in New York because he rebroadcast DISH Programming across the United States without any restrictions on users in New York," and he "derived substantial revenue from interstate or international commerce, as evidenced by the at least 12,731 Device Codes sold by just two of his resellers."  (Mem. at 9 n.1).  This bare recitation of the elements of the long-arm statute, absent any evidentiary support, is insufficient to justify the exercise of personal jurisdiction.

argue that these resellers operated "interactive, commercial websites"[10] with customers in New York, and because the resellers were acting as Kaczmarek's agents, any targeting of the New York market is imputed to him and he is therefore subject to this Court's jurisdiction, (*see id.* at 8). These arguments fail for the same reason as outlined above: an absence of allegations of control. Plaintiffs argue in their brief that Kaczmarek "had some control over the actions of these resellers, i.e., Kaczmarek could prevent users from accessing the servers supporting his service." (*Id.*). The Complaint is devoid of

---

[10] In referencing an "interactive website," Plaintiffs presumably are alluding to a framework articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, where the District Court proposed a "sliding scale" for the exercise of personal jurisdiction on the basis of a defendant's online activity. 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Specifically, the Court stated:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (citations omitted). The Second Circuit has adopted *Zippo*'s "sliding scale" to evaluate "whether the defendant 'transacts any business' in New York—that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251–52 (2d Cir. 2007) (alteration in original) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1985)). But because Plaintiffs have failed to establish that the resellers are Kaczmarek's agents, the Court does not reach the question of whether their operation of potentially "interactive" websites justify the exercise of personal jurisdiction over Kaczmarek. The Court also notes that Plaintiffs do not allege that Kaczmarek operates any website on his own such that it may exercise personal jurisdiction over him on that basis; the Complaint only alleges that IPGuys subscriptions were sold through resellers. (Compl. ¶ 17).

any such allegation, as is the declaration submitted by one of said resellers. (*See generally* Compl.; Mukhlall Decl.). And even if there were such an allegation, it would be insufficient to establish control within the meaning of CPLR 302. *See supra.*

Separately, even if Plaintiffs *did* make sufficient allegations of control, there are no indications that the resellers are present in New York or targeted the New York market. For one, the information provided in the default judgment motion about the alleged resellers suggests the opposite: that the resellers live abroad and targeted the Canadian market. The motion for default judgment provides details about two resellers: Shabbir Janoowalla, who operated "Romie IPTV World," and Roopnarine Mukhlall, who operated IPGuys Live. (Smith Decl. ¶ 11). Mukhlall lives in Ontario, (Mukhlall Decl. at 1 ("I, Roopnarine David Mukhlall, of Binbrook, Ontario, Canada[.]")), and Janoowalla's PayPal records all connect him to Canada, not New York.[11] Further, Romie IPTV World prices its subscriptions in Canadian dollars. (Ex. 7 to Smith Decl., Dkt. No. 37, at 2 ("ALL THE PRICES ARE IN CANADIAN $$$")). In other words, even if Plaintiffs had shown that the resellers were Kaczmarek's agents, an agent who does not act in New York or direct its activities to New York cannot establish personal jurisdiction over the principal.

C.     Federal Rule 4(k)(2)

As an alternative, and also in a footnote, Plaintiffs contend personal jurisdiction is proper under Federal Rule 4(k)(2), (Mem. at 10 n.2), which provides that, for claims

---

[11] Plaintiffs provide records of three PayPal accounts connected with Janoowalla. These records list addresses in Ontario, (Account Info for Shabbr Kanoowalla, attached as Ex. 9 to Smith Decl., Dkt. No. 37, at 1; Account Info for Shaebbir Jnoowalla, attached as Ex. 11 to Smith Decl., Dkt. No. 37, at 1), and Quebec, (Account Info for Patrick Lewis, attached as Ex. 10 to Smith Decl., Dkt. No. 37, at 1).

arising under federal law, "serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and its laws," Fed. R. Civ. P. 4(k)(2). This "rule provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002); *see, e.g.*, *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004).

This argument also fails. To exercise personal jurisdiction over a defendant pursuant to Rule 4(k)(2), Plaintiffs must show (1) the claims arise under federal law; (2) the defendant would not be subject to personal jurisdiction in any state's court of general jurisdiction; and (3) the exercise of personal jurisdiction comports with the due process clause of the Fifth Amendment. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008); *Daventree Ltd.*, 349 F. Supp. 2d at 760. While the claims against Kaczmarek arise under federal law, and Plaintiffs have pled that Kaczmarek is not subject to suit in any other state, (Compl. ¶¶ 7–8), Plaintiffs have not sufficiently demonstrated that Kaczmarek has sufficient contacts with the United States such that an exercise of jurisdiction would comport with constitutional due process. As explained above, Plaintiffs have not demonstrated that Kaczmarek has meaningful contacts with New York, and Plaintiffs make no specific allegations of contacts with other states or the United States generally. At bottom, Plaintiffs allege that Kaczmarek, a Canadian and Polish resident, used DISH subscriber accounts—some of which were maintained by two New York residents—operated a streaming service which was marketed through websites operated from Canada, sold significant subscriptions in Canada, and priced in

Canadian dollars. These are nonexistent to sporadic contacts between Kaczmarek and New York; these are, thus, insufficient minimum contacts with the United States to establish jurisdiction under Rule 4(k)(2). *See, e.g.*, *TAGC Mgmt. LLC v. Lehman*, No. 10-CV-6563, 2011 WL 3796350, at *6 (S.D.N.Y. Aug. 24, 2011) ("The conduct of which plaintiff complains here, namely Garner's activity in defendants' purported scheme, occurred only in China, not in the United States. The mere fact that Garner participated in defendants' scheme, the consequences of which were felt at least in part in the United States, is therefore insufficient to confer jurisdiction under Rule 4(k)(2).").

  D. <u>Jurisdiction Over the Defoes</u>

   The Court, however, has personal jurisdiction over the Defoes. The Defoes consented to the jurisdiction of this Court in their answer. (Defoes Answer ¶ 8). And even if they had not appeared in the case, the Court would have personal jurisdiction over them because, among other things, the Defoes were personally served with process within the state of New York. (John Defoe Executed Summons; Julia Defoe Executed Summons); *Burnham v. Superior Ct.*, 495 U.S. 604, 610–11 (1990) ("The view developed early that each State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit[.]"); *see, e.g.*, *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 262 (E.D.N.Y. 2014) (noting that "[i]t has been a 'longstanding principle that service of process on a defendant within a jurisdiction, no matter how briefly, is sufficient to confer personal jurisdiction'" and CPLR section 301 permits such jurisdiction (quoting *Am.-Eur. Art*

*Assocs., Inc. v. Moquay*, No. 93-CV-6793, 1995 WL 317321, at *3 (S.D.N.Y. May 24, 1995))).

II.  <u>Entry of Default Judgment Against the Defoes</u>

Rule 16(f) provides that, "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to appear at a scheduling or other pretrial conference; . . . [or] fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(A), (C).  The orders authorized by Rule 37 include "rendering a default judgment against the disobedient party."  *Id.* r. 37(b)(2)(A)(vi); *see, e.g.*, *Sanchez v. Abderrahman*, No. 10-CV-3641, 2014 WL 4919258, at *2 (E.D.N.Y. Sept. 30, 2014) (adopting report and recommendation in part) (granting default judgment against defendant who "appeared in th[e] action for a period of time" but who failed to attend a pretrial conference "despite being warned one month in advance that the failure to attend could result in a default judgment").  In other words, a court is permitted to *sua sponte* enter a default judgment against a defendant who fails to comply with pretrial orders and appear at pretrial conferences. *See, e.g.*, *Allstate Ins. Co. v. Lopez*, No. 14-CV-4826, 2016 WL 11096618, at *3–4 (E.D.N.Y. Feb. 25, 2016) (recommending entry of default against *pro se* defendants who, after their counsel withdrew, "willfully ignored" court orders and "abdicated [their] responsibilities in this litigation" despite warnings that a default judgment could be entered against them (alteration in original) (quoting *Trs. of the Paper Prods., Miscellaneous Chauffers, Warehousemen & Helpers Union Loc. 27 Welfare Tr. Fund & Pension Fund v. J & J Int'l Logistics, Corp.*, No. 12-CV-1475, 2013 WL 5532710, at *2 (E.D.N.Y. Oct. 4, 2013))), *report and recommendation adopted sub nom. Allstate Ins. Co. v. Yehudian*, 2016 WL 4129104 (Aug. 2, 2016).  This includes against defendants

proceeding *pro se*. *E.g.*, *id.*; *Beata Music LLC v. Danelli*, No. 18-CV-6354, 2021 WL 195708, at *4 (S.D.N.Y. Jan. 20, 2021). But "because *pro se* litigants are generally unfamiliar with the procedures and practices of the courts," before imposing sanctions under Rule 16(f), a court must "first warn[ ] the litigant of the consequences of noncompliance." *Beata Music LLC*, 2021 WL 195708, at *4.

The decision to impose sanctions under Rule 16(f) is addressed to the discretion of the District Court. *Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y. 1997). And in reaching that decision, courts are to consider "the extent and duration of the noncompliance, the culpability of the noncompliant party, the adequacy of notice, and the efficacy of lesser sanctions." *Leisure Direct, Inc. v. Glendale Cap., LLC*, No. 05-CV-4473, 2009 WL 10712620, at *3–4 (E.D.N.Y. Apr. 14, 2009) (recommending default where defendants filed an answer and initially participated in discovery, but subsequently "failed to appear as required at scheduled court conferences," "failed to engage in settlement discussions," and "refused to communicate with their attorney or cooperate in the preparation of the joint pretrial order"), *report and recommendation adopted*, 2009 WL 10712621 (May 11, 2009). Because the entry of default judgment is such a severe sanction, courts typically find it justified only where there is "intentional misconduct that has materially and negatively affected the resolution of an action." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 123 (S.D.N.Y. 2015) (collecting cases).

The entry of default judgment against the Defoes is warranted here. The Defoes failed to comply with three orders of this Court over the last nine months, despite multiple warnings that failing to do so could result in a default judgment against them. First, they failed to appear for the September 29, 2020 status conference. (Order to Show Cause dated Sept. 30, 2020). Second, they did not comply with the order

directing them to explain why they failed to appear for the conference. (*Id.*). And third, they did not comply with the second order directing them to explain why they did not appear for the conference. (Order dated Oct. 13, 2020). The third and final order warned the Defoes that, if they did not respond to the Court's order, a default judgment could be entered. (*Id.*). The Court also warned the parties at the hearing on their prior counsel's motion to withdraw that any failures to appear could result in a default judgment. (Hr'g Tr. at 7:02–:11). Further, the Defoes have not responded to either of the default judgment motions served upon them.[12] The refusal to respond to multiple Court orders, to respond to motions filed against them, or to otherwise communicate with the Court justifies entry of a default judgment. *See, e.g.*, *Sanchez*, 2014 WL 4919258, at *2 (permitting entry of default judgment where defendants failed to appear for one conference, to respond to motions for default judgment served on them, or to communicate with the Court for over a year).

The Court also concludes that the Defoes' conduct was willful. The Defoes were aware that a default judgment could be entered against them if they failed to participate in the litigation, and they still failed to respond to the Court's orders or to Plaintiffs' repeated motions despite repeated notice. *See, e.g.*, *Lopez*, 2016 WL 11096618, at *4 (concluding that defendants "willfully ignored" court orders when they were provided "ample notice of the consequences of noncompliance" and still "complete[ly] fail[ed] to participate in this litigation" following the withdrawal of their counsel).

---

[12] Further, the Defoes did not respond to Plaintiffs' premotion conference letter indicating their plans to move for summary judgment, although it was served on the Defoes by email and mail. (Pls.' Req. for Pre-Mot. Conference on Mot. for Summ. J. dated Sept. 30, 2020, Dkt. No. 32, at 3).

And finally, the Court determines that lesser sanctions would be ineffective. Given that "prior orders threatening a default judgment were not sufficient to coerce [the Defoes] into obeying court orders . . . , this Court finds that no sanction short of a default judgment is likely to be efficacious." *Walpert*, 127 F. Supp. 3d at 127–28; *see also Lopez*, 2016 WL 11096618, at *4.

For these reasons, the Court recommends that entry of a default judgment against the Defoes is appropriate.

III.   <u>Liability</u>

After determining that the Defoes' noncompliance with Court orders justifies entry of a default judgment under Rule 16(f), "the Court must 'follow the procedure for entry of a default judgment as set forth in [Rule 55].'" *Walpert*, 127 F. Supp. 3d at 129 (alteration in original) (quoting *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *5 (S.D.N.Y. Nov. 28, 2011)).  Under Rule 55, in deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

Next, the court must determine "whether the unchallenged facts constitute a legitimate cause of action."  10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim

for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

DISH (alone, not NagraStar) asserts one cause of action against the Defoes: violation of § 605(a) of the Federal Communications Act. (Compl. ¶¶ 23–25 (Count I)). Section 605(a) of the Federal Communications Act provides:

> Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

> No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (line breaks added).  This section includes four sentences, which courts analyze separately.  *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (June 5, 2018).

DISH alleges the Defoes "assisted Kaczmarek in divulging and using, and assisted users of his IPGuys service to receive, DISH Programming without DISH's authorization and for the benefit of Defoes, Does 1–10, Kaczmarek, and users of his IPGuys service that were not entitled to receive such DISH Programming."  (Compl. ¶ 23).  In other words, it appears DISH alleges a violation of the third sentence, which states:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).  This third sentence of § 605(a) "prohibits persons from receiving and using radio communications for the benefit of himself or others (who themselves lack authorization)."  *Nacipucha*, 2018 WL 2709222, at *4.

Taking DISH's allegations as true, the Court concludes that the Defoes are liable for violations of the third sentence of § 605(a).  This subsection reaches conduct in which "the Programming at issue was at one point transmitted by satellite."  *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL 696126, at *9–10 (S.D.N.Y. Feb. 15, 2017) (finding that the third sentence of § 605(a) reached the rebroadcasting of satellite television via IPTV player and applying *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132–33 (2d Cir. 1996)), *report and recommendation adopted*, 2017 WL 2988249 (Mar. 27, 2017).  For example, a paying subscriber who retransmits a satellite communication over the internet to others who

are not paying subscribers is liable under § 605(a)'s third sentence. *See, e.g., Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 473 (E.D.N.Y. 2012) ("Plaintiffs have alleged that the Defendants with individual accounts received the DISH signal containing the subject channels and divulged the satellite signal to . . . subscribers, which were not authorized to receive the subject channels, for financial gain. These facts plausibly alleged that Defendants violated the third sentence of § 605(a)."). That is precisely the present case. DISH has alleged that the Defoes maintained seeder accounts that supported IPGuys, a service which transmitted via the internet legally obtained DISH satellite communications to its own customers, who were not authorized to receive that programming. (Compl. ¶¶ 15, 23; Smith Decl. ¶¶ 6–8). And DISH asserts the Defoes did this for "commercial advantage and private financial gain." (Compl. ¶ 24).[13] In other words, DISH has demonstrated the Defoes "assist[ed] in receiving . . . communication[s] by radio and" that they "use[d] such communication . . . for [their] own benefit." 47 U.S.C. § 605(a). As such, a judgment of liability on this single claim against the Defoes is warranted.

IV.   Damages and Injunctive Relief

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158. "[A]lthough the default establishes a defendant's

---

[13] Plaintiffs allege in the Complaint that "Julia Defoe engaged in a number of transactions with Kaczmarek, totaling tens of thousands of dollars sent from Kaczmarek to Defoe and specifically referencing DISH." (Compl. ¶ 15). However, it is unclear from the record that these payments are related to IPGuys; in fact, Plaintiffs' motion papers suggest these payments were related to a similar, but distinct, service called MundoIKS. (Smith Decl. ¶ 9(b)). Regardless, the Court infers from the Complaint that the Defoes provided assistance for financial gain, even if the transactions highlighted in one of the supporting declarations did not involve IPGuys.

liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). For violations of § 605(a), DISH seeks statutory damages and a permanent injunction against the Defoes.[14] Both are addressed in turn below.

A.    <u>Damages</u>

In a private right of action under § 605(a), an "aggrieved party" may recover actual damages suffered as a result of the violation or statutory damages of $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). In cases of willful violations, the Court may enhance either an actual or statutory damage award up to $100,000. *Id.* § 605(e)(3)(C)(ii).

---

[14] Both Plaintiffs waived entitlement to attorney's fees and costs. (Mem. at 14).

DISH has elected statutory damages of $1,000 for each violation of § 605(a). (Mem. at 13). It asks the Court to award damages for 12,731 violations of the statute based on its determination that IPGuys has sold at least 12,731 passcodes through its two primary resellers. (*Id.* at 12–13). In other words, DISH posits that the Defoes—who are liable for "receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for [their] own benefit"— should be liable for damages based on the number of IPGuys customers.

The Court finds that an award of $1,000 per violation of § 605(a)—the minimum contemplated by the provision—is appropriate here. However, the Court concludes that violations should be measured by the number of seeder accounts the Defoes managed rather than the number of IPGuys customers; that is, seven. For the reasons outlined below, the Court recommends a statutory damage award of $7,000 in favor of DISH.

Statutory damages standardize, "based on a pattern or formula," a damages remedy for certain "unmeasurable items," such as "defamation, invasion of privacy, or deprivation of civil rights." 1 Dan B. Dobbs, *Law of Remedies* § 3.3(2) (2d ed. 1993). And "court[s] ha[ve] broad discretion, within statutory limits, in awarding statutory damages." *Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015) (adopting report and recommendation).

First, the Court concludes that measuring statutory damages against the Defoes by the number of IPGuys subscribers is inappropriate. Plaintiffs cite *DISH Network, LLC v. Henderson*, where the defendants—a mother and son and his corporate alter ego—operated a streaming service similar to IPGuys and were assessed $10,000 in statutory damages based on an estimate of the number of passcodes sold. No. 19-CV-1310, 2020 WL 2543045, at *7 (N.D.N.Y. May 19, 2020). The defendants operated the

service, advertised it on YouTube, and sold subscriptions directly to customers. *Id.* at *1, *7. Similarly, in *Dish Network L.L.C. v. Dillion*, the individual defendants were owners and operators of a website that marketed software to assist in pirating DISH programming and were assessed statutory damages based on the estimated number of software downloads. (Order Granting Default J. and Entering Final J. and Permanent Inj., attached as Ex. 17 to Smith Decl., Dkt. No. 37, at 4, 6). The Defoes stand apart from the *Henderson* and *Dillion* defendants; they are not alleged to have operated IPGuys itself, or to have marketed or sold a single IPGuys subscription. That is, they had no direct interactions with the customers who illegally accessed the protected subscriptions. And they were at least two steps removed from the customers themselves: the Defoes created "seeder" accounts for Kaczmarek, who then provided services and other support to resellers like IPGuys, who in turn sold the pirated access to DISH services to the end consumer. While the Defoes' assistance to Kaczmarek subjects them to § 605(a) liability, their removed role requires a different damages analysis.

The statute makes it unlawful for any person to "assist in receiving" any satellite communications and then use those communications for her own benefit or the benefit of another. 47 U.S.C. § 605(a). A violation is thus the act of assistance, and the number of acts of assistance is the more appropriate measure of damages. Plaintiffs allege—or ask the Court to infer—that the Defoes operated seven seeder accounts for IPGuys. (Compl. ¶¶ 13–15). As a result, the Court recommends that the opening of each seeder account be considered a separate violation of the statute, and that judgment be entered

in favor of DISH for $7,000; $1,000 in statutory damages for each seeder account.[15]

(While the Court would have entertained a request for enhanced statutory damages,

Plaintiffs state that such damages based on willfulness were "not requested." (Mem. at

14).)

B.    Permanent Injunction

Both Plaintiffs also seek a permanent injunction.  Specifically, Plaintiffs seek an

injunction barring Defendants, and any officer, agent, servant, employee, or
other person acting in active concert or participation with any of them that
receives actual notice of the order, from:

> a.  Receiving or assisting others in receiving Plaintiff DISH Network
> L.L.C.'s satellite communications or the television programming
> comprising such communications without authorization from
> Plaintiffs, including through operation or use of the IPGuys
> streaming service;
>
> b.  Selling or distributing codes for accessing the IPGuys streaming
> service or any other device or equipment that is intended for
> receiving or assisting others in receiving Plaintiff DISH Network
> L.L.C.'s satellite communications or the television programming
> comprising such communications without authorization from
> Plaintiffs.

---

[15] A more modest award is also in line with Circuit guidance on evaluation of
statutory damages awards.  For example, in the context of copyright infringement under
the Copyright Act, the Second Circuit has considered a variety of factors in evaluating
statutory damage awards; for example, (1) "the expenses saved and the profits reaped by
the infringers"; (2) "revenues lost by the plaintiff"; (3) "the value of the copyright";
(4) deterrent effect on others besides the defendant"; (5) "whether the defendant's
conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing
particular records from which to assess the value of the infringing material produced";
and (7) "the potential for discouraging the defendant." *Fitzgerald Publ'g Co. v. Baylor
Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (collecting cases).  Analogized here, while
Plaintiffs have shown that the Defoes acted willfully, (*see* Compl. ¶¶ 18–19), Plaintiffs
have not made a showing of "profits reaped" by the Defoes, of "revenues lost" by DISH,
or established that a multimillion-dollar award is necessary to deter the Defoes from
future violations of the statute.  And it appears that the Defoes both sat for depositions
in this case, (*see* Smith Decl. ¶ 4(a)–(b)), but information about their personal profit or
loss was not elicited or simply not presented to the Court.

(Default J., attached as Ex. 3 to Mot., Dkt. No. 37, ¶ 3).  In other words, Plaintiffs seek to enjoin Defendants from both (1) assisting others in receiving DISH programming through, for example, services like IPGuys; and (2) selling or distributing access to services like IPGuys which grant users unauthorized receipt of DISH programming.  For the reasons outlined below, the Court concludes that Plaintiffs lack standing to seek a permanent injunction with respect to either category.

"For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Standing is a question of subject-matter jurisdiction, and "[t]his Court has an independent obligation to ensure that subject-matter jurisdiction exists." *Stets v. Stets*, No. 18-CV-1401, 2020 WL 9439459, at *2 (E.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, Order (May 5, 2020).  In other words, although Plaintiffs' motion is unopposed, and although DISH has established standing to seek damages from the Defoes based on past violations of § 605(a), Plaintiffs must also separately establish standing to seek a permanent injunction.

A party has standing to pursue an injunction where there is "an indication of a 'continuing violation or the imminence of a future violation.'" *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)).  "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013).  "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury . . . but

must show a likelihood that he . . . will be injured in the future.'" *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (alterations in original) (quoting *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *cf.* 1 Dobbs, *supra*, § 2.4(7) ("[E]quitable relief such as an injunction should be denied according to the usual balancing and discretion of equity courts if, in spite of past violations of the statute, the defendant presented no threat of future violation[.]").  Unlike claims for damages, past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  For example, "if the 'objectional practice ceased altogether before the plaintiff filed his complaint,' then the plaintiff may not seek an injunction." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2015 WL 6243526, at *107 (S.D.N.Y. Oct. 20, 2015) (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)).

The Complaint's allegations are sparse or silent on these elements.  Plaintiffs claim that IPGuys continues to operate.  (Compl. ¶ 18).  They also claim the Defoes' violations of § 605(a) "caused damage to DISH in an amount to proven at trial" and that, "[u]nless restrained and enjoined," the Defoes would continue to cause damage to DISH.  (*Id.* ¶ 25).  Plaintiffs also appear to be asking the Court to infer—based on Kaczmarek and the Defoes' participation in Digital Clinic, (*id.* ¶ 19), and now IPGuys— that the Defoes will develop yet another DISH-related venture unless enjoined.

These allegations are insufficient to establish standing for a permanent injunction as to the Defoes.  Plaintiffs have not alleged, and therefore not demonstrated, that the Defoes are continuing to seed IPGuys or, if they have stopped doing so, that they are likely to resume seeding the service.  Plaintiffs have also not alleged, and not

demonstrated, that the Defoes have ever sold or distributed passcodes for IPGuys, much less that they are likely to do so in the future. And to the extent that Plaintiffs wish to enjoin the Defoes for their participation in Digital Clinic, it appears that this venture has already concluded[16] and, as a result, injunctive relief is inappropriate. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 463454, at *107–08. As a result, the Court recommends that Plaintiffs' request for a permanent injunction be denied.

CONCLUSION

For the reasons stated, the Court respectfully recommends that Tomasz Kaczmarek be dismissed from the case for lack of personal jurisdiction, and that the dismissal be without prejudice. *Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 16 (2d Cir. 2015) (affirming dismissal for lack of personal jurisdiction without prejudice and noting that, in the absence of personal jurisdiction, a court "cannot . . . dismiss [a] claim with prejudice"). Since Kaczmarek is the only Defendant named in Count II, that claim should be dismissed without prejudice. The Court also recommends that a default judgment be entered against John and Julia Defoe pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, and they be held liable for seven violations of § 605(a) of the Federal Communications Act, 47 U.S.C. § 605(a), and judgment be entered in favor of DISH Network, L.L.C. in the total amount of $7,000. The Court further recommends that no permanent injunction be issued.

---

[16] At John Defoe's deposition on August 20, 2020, counsel asked him to identify the forums he sold modified DISH receivers as part of the Digital Clinic operation. (Dep. Tr. dated Aug. 20, 2020, attached as Ex. 4 to Smith Decl., Dkt. No. 37, at 31:02–:10). John Defoe responded, "It's so long. I don't think it even exists it was so long ago." (*Id.* at 31:11–:12).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiffs are directed to serve a copy of this Report and Recommendation on all Defendants and file proof of service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* June 24, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York